```
DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

THOMAS R. GREEN (CABN 203480)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3695
    FAX: (510) 637-3724
    E-Mail: thomas.green@usdoj.gov

Attorneys for United States of America
```

FILED
FEB 12 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

MAG

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALHAJI JEWRU TOURAY, <br><br> Defendant. | CASE NO. 4-20-70168 <br><br> NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on February 11, 2020 the above-named defendant was arrested pursuant to an arrest warrant (copy attached) issued upon an

☐  Indictment

☐  Information

■  Criminal Complaint

☐  Other (describe) _____

pending in the Northern District of Georgia, Case Number: 1:20-MJ-118.

In that case (copy of indictment attached), the defendant is charged with violations of Title 18,

United States Code, Section 1956(h), conspiracy to launder money.

The maximum penalties are as follows:

18 U.S.C. § 1956(h) – a maximum term of 20 years of imprisonment, a fine of the greater of $500,000 or twice the value of the monetary instrument or funds involved, 3 years supervised release, forfeiture of assets, and $100 special assessment.

Respectfully Submitted,

DAVID L. ANDERSON
UNITED STATES ATTORNEY

Date: 2/12/20

THOMAS R. GREEN
Assistant United States Attorney

ORIGINAL

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA
v.

ALHAJI JEWRU TOURAY

**WARRANT FOR ARREST**
AGENT TO ARREST

Case Number: 1:20-MJ-118

TO:   The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ALHAJI JEWRU TOURAY

and bring him or her forthwith to the nearest magistrate judge to answer a **COMPLAINT** charging him or her with: conspiracy to launder money

in violation of 18, United States Code, Section(s) 1956(h).

JOHN K. LARKINS III
Name of Issuing Officer

*[signature]*
Signature of Issuing Officer

United States Magistrate Judge
Title of Issuing Officer

February 7, 2020
Atlanta, Georgia
Date and Location

Bail Fixed at $_____   by_____
                                           Name of Judicial Officer

---

## RETURN

This warrant was received and executed with the arrest of the above-named defendant at:

_____

Date Received:_____

_____
Name and Title of Arresting Officer

Date of Arrest:_____

_____
Signature of Arresting Officer



FILED IN CHAMBERS
U.S.D.C. - Atlanta

FEB 0 7 2019

JAMES N. HATTEN, Clerk
By: /s/
                    Deputy Clerk

# United States District Court
NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

ALHAJI JEWRU TOURAY

**CRIMINAL COMPLAINT**

Case Number: 1:20-MJ-118

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. Between on or about September 2, 2017 until the date of this criminal complaint, in Clayton County, in the Northern District of Georgia, defendant(s) did, knowingly conspire, with others known and unknown, to commit an offense under Title 18, United States Code, Section 1956, as follows: to conduct a financial transaction in and affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance punishable under a law of the United States, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conceal and disguise the nature, location, source, ownership, and control of proceeds of said specified unlawful activity, all in violation of Title 18, United States Code, Section 1956(h).

I further state that I am a(n) HSI Special Agent and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

Signature of Complainant
Matthew DeVane

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

February 7, 2020                              at    Atlanta, Georgia
Date                                                City and State

JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                Signature of Judicial Officer
AUSA Nicholas N. Joy

ATTEST: A TRUE COPY
CERTIFIED THIS

FEB 0 7 2019

James N. Hatten, Clerk
By: /s/
          Deputy Clerk

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

Your affiant, Homeland Security Investigations Special Agent, Matthew DeVane, being duly sworn and deposed, states as follows:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 1956, and Title 21, United States Code, Sections 846 and 841.

2. Specifically, I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since December 2008. I am currently assigned to the HSI, Hartsfield Jackson Atlanta International Airport (HJAIA), Border Enforcement Security Task Force (BEST) Group. The HSI Atlanta BEST Group works in cooperation with State and local drug task forces, as well as other federal agencies, in an effort to interdict and disrupt transnational drug trafficking organizations.

1

## EXPERIENCE AND TRAINING OF THE AFFIANT

3.  I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I received training in violations of criminal and immigration law as well the preparation and execution of search and arrest warrants. My duties and responsibilities include the investigation of criminal violations of United States Code. Prior to December 2008, I was a Peace Officer with the Cobb County, Georgia Police Department. I began my service with Cobb County Police in 2007. I hold a Bachelor's Degree in Business Administration from the University of Georgia.

4.  During my employment with HSI, I have been active in investigations involving narcotics trafficking and distribution and money laundering. I have received training on the subject of narcotics trafficking and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

5.  Based on my training and experience, and based upon interviews I have conducted with defendants, informants, and other witnesses to, and participants in, drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business, including the ways that drug traffickers

maintain records and documents relating to their drug trafficking, and the ways that they conceal, convert, transmit, and transport their drug proceeds.

## TECHNIQUES USED BY DRUG TRAFFICKERS

6. Based on my training and experience and my participation in other investigations involving violations of the federal Controlled Substances Act and related offenses, your affiant knows the following:

    a. That drug traffickers must maintain, on hand, significant amounts of United States currency to maintain and finance their ongoing drug businesses;

    b. That it is common for drug traffickers to keep books, records, receipts, notes, ledgers, airline documents, and other papers relating to the transportation, ordering, purchase, sale, and distribution of controlled substances. The aforementioned books, records, receipts, notes, ledgers, and documents are maintained where the drug traffickers have ready access to them;

    c. That it is common for narcotics distributors to possess contraband including marijuana, heroin, cocaine, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, storage units and other places. Such locations frequently include self-storage

3

units over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities;

d. That to accomplish this concealment, drug traffickers frequently build "stash" places within their residences, their businesses, storage units, vehicles or other locations (including buried on the grounds thereof).

e. That drug traffickers frequently maintain addresses or telephone numbers in books, papers, pocket telephone cards, wrist watches, and smart phone devices such as iPhones, iPads, and other electronic devices, which reflect names, addresses, and phone numbers of their associates in the drug trafficking organization;

f. That it is common for drug traffickers to maintain photographs and videotapes of themselves with their associates in the drug trafficking organization, with drugs and guns, and with assets and fruits of narcotics trafficking, including significant amounts of United States currency and vehicles;

g. That narcotics distributors commonly have in their possession, that is, on their person, in their bags, at their residences, at their business locations, or in storage units they control, firearms, including handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms

4

are used to protect and secure a drug trafficker's property, including drugs, drugs paraphernalia, jewelry, books, records, and United States currency;

h. That it is common for drug traffickers to use digital pagers, cellular/PCS phones, social media websites, residential and business telephones, and two-way radios to stay in communication with one another;

i. That drug traffickers own and maintain facsimile machines, personal desktop and laptop computers and other similar and related devices, including monitors, printers, keyboards, disks, CD-ROMs, personal digital assistants/smart phones such as iPhones and iPads, operating manuals, and the like, that are used in the commission of criminal offenses or that contain evidence of criminal offenses. These devices and programs allow users to manage and track their financial portfolios and generate, transfer, count, record, and store the information listed in the subparagraphs above and below;

j. That drug traffickers possess and maintain multiple cellular phones, smart phones, and other similar devices to communicate with their suppliers and with their customers;

k. That narcotics distributors and money launderers commonly have in their possession, that is, on their person or in their luggage, when traveling by when commercial aircraft, significant amounts of drugs or U.S. currency; and

l. That drug traffickers possess and maintain at their residence or on their person papers, including "pay and owe" sheets, ledgers, and similar documents tracking their narcotics sales;

m. That San Francisco is a known drug source city and travelers have been located at HJAIA carrying bulk U.S. currency believed to be drug proceeds to be used to finance additional drug transactions on commercial aircraft destined for San Francisco within the last twelve months;

n. That drug money couriers will often vacuum seal drug proceeds in an effort to hide the odor of illegal narcotics, found on drug proceeds, from narcotics detecting canines; and

o. It is common for drug traffickers and money launderers to "ghost ship" bags on commercial airline flights. In those instances, individuals will check bags on domestic U.S. commercial flights, so the bag will arrive at its intended destination, without the individual completing the flight himself. Upon arrival at the destination baggage carousel, a co-conspirator will often retrieve the bag in furtherance of drug and money laundering efforts.

## SOURCES OF KNOWLEDGE

7. I make this affidavit based upon personal knowledge derived from the following: personal participation in this investigation; information I have

learned from discussions with other HSI Special Agents and Task Force Officers and other law enforcement officers, airline personnel, and other witnesses, and my review of written reports.

8.  I have endeavored to make clear which facts stated in this Affidavit are based upon my own personal observations and which are not. Unless otherwise noted, factual statements not based upon my personal observations are based upon information received from one or more other law enforcement officers who may have either direct or hearsay knowledge of the factual statement, such knowledge having been conveyed to me either personally or through a report that I have reviewed. Wherever in this Affidavit I state my belief, such belief is based upon my training and experience and upon the information obtained through this investigation.

## PROBABLE CAUSE

9.  On September 2, 2017, Delta Global Services (DGS) employee Bubacarr Drammeh attempted to enter HJAIA through an employee checkpoint located in Concourse F. During an employee security screening, a security guard determined that a bag carried by Drammeh contained a significant amount of U.S. currency, later determined to be $140,270. In an interview on the same date, Drammeh stated to an Atlanta Police Department (APD) Investigator that the money did not belong to him but was the property of Alhaji Touray, who was later

7

identified as Alhaji Jewru Touray ("TOURAY"). Drammeh further stated that Drammeh's spouse also was involved in moving money from Atlanta, Georgia, to San Francisco, California, on behalf of TOURAY. Drammeh made an additional statement to APD that Drammeh had heard that other people were moving bags for TOURAY, but Drammeh did not know their names.

10. In an interview with your affiant on October 11, 2017, Drammeh confirmed that each time he traveled from Atlanta, Georgia, to San Francisco, California, Drammeh was carrying bags containing currency for TOURAY. Drammeh stated that he was paid for transporting currency by checks endorsed by TOURAY, which Drammeh would then complete the amount portion prior to depositing into his bank account.

11. Bank records from a Fidelity Bank account in the name 2 Rays Mart LLC (xxxxx3355) revealed numerous checks from the account to Bubacarr Drammeh, which were subsequent to trips completed from Atlanta to San Francisco by Drammeh or his wife Matako Drammeh. Fidelity Bank records further confirmed that account xxxxx3355 was opened on June 16, 2015, by Jewru TOURAY who used Social Security Number xxx-xx-9187.

12. Records from the Social Security Administration confirmed that Social Security Number xxx-xx-9187 is assigned to TOURAY.

8

13. Drammeh confirmed that on at least one occasion the U.S. currency was vacuum sealed, which as I explained above, is consistent with the manner in which drug traffickers often package drug money for transportation.

14. On December 12, 2018, at approximately 0640 hours, I observed TOURAY and Niaja DACE[1] in the T13 Boarding Gate area at HJAIA. The two individuals were talking together and attempted to board the plane together, but an airline gate agent initially stopped DACE due to a ticketing issue. Eventually, TOURAY and DACE boarded United Airlines flight 1900, which was boarding at that gate and destined for San Francisco.

15. That same day, at approximately 0644 hours, members of the Hartsfield BEST Group located two checked bags at the United Airlines baggage carousel located underneath Concourse T. The bags were both checked under the name Jewru TOURAY for United Airlines Flight 1900. Agents did not observe any luggage checked under DACE's name.

16. After receiving a narcotic detecting canine alert to the presence of the odor of narcotics coming from the bags, HSI Agents obtained a federal search

---

[1] On November 26, 2018, APD officers responded to an alleged burglary at an apartment rented by Niaja DACE at 3227 Verdant Dr. SW, Unit 1517, Atlanta, Georgia. While walking through the apartment with DACE to determine what, if anything, was stolen, officers observed an approximately gallon sized plastic bag of marijuana in plain view. The marijuana was seized, but no arrests were made at that time.

9

warrant for the bags, which led to the discovery and seizure of approximately $73,975 in U.S. currency, concealed within the bags.

17. On December 13, 2018, the day after TOURAY's bags had been seized, DACE contacted APD to report her bag stolen from a United Airlines flight on December 12, 2018 at 0600 hours, which is consistent with the flight she took with TOURAY. In the report, DACE stated that she checked her luggage for the flight and provided an aggregated loss estimate of $45,000.

18. On January 25, 2019, HSI Agents received information that Niaja DACE intended to travel onboard Southwest Airlines Flight 682 from Atlanta to Denver, Colorado. Upon arrival in Denver, DACE's travel itinerary included a connecting flight onboard Southwest Airlines flight 1881 to Reno, Nevada.

19. Video surveillance at HJAIA captured DACE entering the airport check-in area with a suitcase at 0513 hours. At 0518 hours, the same camera captured DACE leaving HJAIA without the suitcase.

20. That same day, at approximately 0521 hours, HSI Agents located a checked bag in the Southwest Airlines baggage sorting area located underneath Concourse T at HJAIA. The bag was checked under the name Niaja DACE, and it appeared to be the same one observed in the video footage.

10

21. After a narcotics canine alerted to the presence of the odor of narcotics coming from the bag, HSI Agents obtained a federal search warrant for the bag. HSI Agents discovered and seized approximately $48,770 in U.S. currency that was concealed within the bag. HSI Agents confirmed with a Southwest Airlines gate representative that the bag was checked at a kiosk at HJAIA, but DACE did not board the flight for which the bag was checked.

22. The same day, Federal Air Marshals from the Federal Air Marshal Service established surveillance at the baggage claim carousel area for Southwest Airlines flight 1881 in Reno, Nevada, the flight's destination. If HSI Agents had not searched and seized the luggage checked by DACE in Atlanta, Southwest Airlines would have delivered the bag to this carousel. An Air Marshal observed and photographed TOURAY arriving at the carousel appearing to search for the already seized bag. TOURAY departed empty-handed.

23. On September 11, 2019, HSI agents interviewed a confidential source (CS)[2] for information about sending large quantities of U.S. currency in checked luggage. On August 10, 2018 and October 7, 2018, the CS had been identified trying to check luggage at Nashville International Airport (NIA) containing $45,600.00 and $114,990.00, respectively. The currency was seized by agents from the Drug

---

[2] The CS is providing information in exchange for consideration on the money laundering case described in this section. The CS has no prior criminal history. HSI Agents have corroborated the information the CS has provided where possible and believe the information that the CS has provided to be credible and reliable.

11

Enforcement Administration (DEA), believing the currency to represent drug proceeds.

24. During the interview, the CS stated that the money seized from him at NIA belonged to TOURAY, who the CS said was involved in marijuana trafficking between suburban San Francisco and Atlanta, Georgia. The CS also said the CS had driven loads of marijuana belonging to TOURAY from California to Georgia, including as recently as two days prior to the interview. The CS identified the residence at 1354 Springhill Drive, Pittsburg, California 94565 as a location where the CS and TOURAY had previously vacuum sealed bags of marijuana together that were destined for Atlanta.

25. On February 5, 2020, agents with the Federal Bureau of Investigation (FBI) conducted a trash pull at 1354 Springhill Drive, Pittsburg, California 94565. Items discarded from 1354 Springhill Drive, Pittsburg, California 94565 included approximately 30 vacuum seal bags containing marijuana residue, receipts with TOURAY's name, an airbag recall notice with DACE's name, and 16 empty aerosol cans used to dispense expandable foam. According FBI agents, expandable foam is often used by drug traffickers to package narcotics in the hope that the narcotics will be harder to detect.

26. As described in this section, HSI Agents have determined that TOURAY, assisted by multiple co-conspirators, transferred, delivered, and otherwise disposed of hundreds of thousands of dollars in U.S. currency from Atlanta, GA to suburban San Francisco, CA between at least 2015 up until the present. Based on my training and experience, the methods in which TOURAY and his co-conspirators moved this money – including checking luggage with bulk currency without taking the flight and having another party at the flight's destination pick up the luggage – were designed to hide the nature, location, source, ownership, or control of the money. As described in this section, HSI Agents believe that this money constituted proceeds from the sale of illegal narcotics and that, based on the investigation, TOURAY knew that the money came from the sale of illegal narcotics.

## CONCLUSION

27. Based upon the above, I believe that there is probable cause to believe that the defendant, TOURAY, did knowingly conspire, with others known and unknown, to commit an offense under Title 18, United States Code, Section 1956, as follows: to conduct a financial transaction in and affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, the felonious manufacture, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance punishable under a law of the

13

United States, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, to conceal and disguise the nature, location, source, ownership, and control of proceeds of said specified unlawful activity, all in violation of Title 18, United States Code, Section 1956(h).

**END OF AFFIDAVIT**